IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HELEN DEWITT,
        Plaintiff,


vs.                                                    Case No. 08-1257-JTM


MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,
        Defendant.


MEMORANDUM AND ORDER

Presently before this court is plaintiff Helen Dewitt's petition for review of a final decision of the Commissioner of Social Security.  (Dkt. No. 8).  Dewitt's application for Social Security disability insurance benefits was denied on September 13, 2006, upon the determination by the Administrative Law Judge ("ALJ") that Dewitt was not disabled under sections 216(I) and 223(d) of the Social Security Act.  For the following reasons, this court denies the appeal and affirms the decision of the ALJ.

On October 10, 2003, Dewitt protectively filed an application for disability insurance benefits, alleging she had a disability that began on October 5, 2001.  The claim was denied initially on February 6, 2004, and upon reconsideration on April 14, 2004.  A hearing was held on July 6, 2005, and the ALJ found that Dewitt was not disabled.  The Social Security Administration Appeals Council remanded Dewitt's case for further consideration on February 2, 2006.  The ALJ held a hearing on August 15, 2006, and in an order dated September 13, 2006, he found that plaintiff was

not disabled.  On June 18, 2008, the Appeals Council denied Dewitt's request for review of the unfavorable decision, rendering the ALJ decision the final decision of the Commissioner.  Dewitt then timely filed a complaint with this court. (Dkt. No. 1).

Dewitt claims the record shows she suffers from impairments of such severity and duration as to constitute a disability within the meaning of the Social Security Act, which would entitle her to Social Security disability benefits.  She was born in 1961 and claims disability due to: 1) thoracic outlet syndrome; 2) capsulitis of her right shoulder; 3) overuse syndrome; 4) ulnar nerve numbness in three fingers bilaterally; and 5) difficulty with grabbing, holding, lifting, reaching, and generally using her hands. (Tr. at 212 & 237).

The ALJ concluded that Dewitt had not engaged in substantial gainful activity as of the alleged onset date of disability.  (Tr. at 20).  He found that Dewitt had the following severe impairments: 1) status post repair of a partial right shoulder rotator cuff tear; 2) status post carpal tunnel surgery in July 2000 and April and May 2006; 3) degenerative disc disease of the neck; and 4) obesity.  (Tr. at 21).  He further found that Dewitt did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 21).  Specifically, the ALJ found that, after careful consideration of the entire record:

> The claimant testified that she weighs 280 pounds and is five feet eight inches tall.  She stated she has right shoulder and neck pain, drops items with the right hand, cannot raise the right upper extremity above shoulder height and has right arm and bilateral hand numbness.  She maintained that knee pain and swelling makes it hard to walk, use steps, sit and stand.  She claimed a herniated disc in the neck causes bad headaches and difficulty turning the neck or holding it in one position.

As for the factors that weigh against claimant's credibility, the undersigned notes that the signs and findings in the objective medical evidence of record do not support the claimant's allegation regarding the severity, intensity and duration of her symptoms.
The opinions of Dr. Moiser, Dr. Zarr, Dr. Venkat, Dr. Galate, Dr. Toma and the work assessment dated July 12, 2005, persuade the undersigned that her limitations are not as severe as alleged.

Finally, the undersigned gives considerable weight to the testimony of the medical expert, Dr. Brahms, who cited to the record in opining that the claimant is capable of performing sedentary work but cannot grasp repetitively, work overhead with the right arm, can occasionally climb and should have no problem sitting.

Accordingly, the undersigned finds the claimant retains the following residual functional capacity: She can perform work with a sedentary exertional level. She cannot work overhead with the right upper extremity, stoop, bend, crawl, use a keyboard, engage in repetitive handling or fingering or be exposed to vibration.

The vocational expert testified that, based upon the claimant's residual functional capacity, she could not perform her past relevant work.

Based upon the claimant's residual functional capacity, she is capable of performing a significant range of sedentary work . . . . Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

The vocational expert testified that . . . the claimant could work as security system monitor, telephone solicitor and credit authorizer.

(Tr. at 22-27)

This court's review is guided by the Social Security Act, which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the court must determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir.2001). Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion. *Castellano v. Sec'y of Health and Human*

*Servs.,* 26 F.3d 1027, 1028 (10ᵗʰ Cir.1994); *Gossett v. Bowen,* 862 F.2d 804 (10ᵗʰ Cir.1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White,* 287 F .3d at 905 (quoting *Casias v. Sec'y of Health and Human Serv.,* 933 F.2d 799, 800 (10ᵗʰ Cir.1991)).

An individual is under a disability only if that individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue,* 501 F.Supp.2d 1303, 1306-07 (D. Kan.2007) (citing 42 U.S.C. § 423(d)). The impairment must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience. *Barnhart v. Walton,* 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005).

Pursuant to the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10ᵗʰ Cir.2004); 20 C.F .R. § 404.1520(a) (2003). The steps are followed in order, and if it is determined that the claimant is or is not disabled at a step of the evaluation process, evaluation under a subsequent step is unnecessary.

The first three steps require the Commissioner to assess whether claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether she has severe impairments, and whether the severity of her impairments meets or equals a specific list of impairments. *Williams v. Bowen,* 844 F.2d 748, 751 (10ᵗʰ Cir.1988). If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity

(RFC), which is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e).

Upon assessing the claimant's RFC, the Commissioner can then move on to steps four and five, which require assessing whether the claimant can perform her past relevant work and whether she can generally perform other work in the national economy. *Williams,* 844 F.2d at 751. The claimant bears the burden throughout steps one through four to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir. 2001). The burden then shifts to the Commissioner at step five to show other jobs in the national economy that are within the claimant's capacity to perform. *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999).

In *Baker v. Barnhart,* No. 03-7041, 2003 WL 22905238, *3 (10th Cir. Dec. 10, 2003), the court held the ALJ erred in discussing claimant's back pain without any reference to or mention of the obesity of the 288-pound claimant. The ALJ in that case failed to address the impact of the claimant's obesity at Step Four of the sequential process, even though the claimant had specifically listed obesity as one of her impairments in her claim for disability, and even though the ALJ had acknowledged at Step Two that the claimant was severely impaired by "chronic back pain secondary to a compression fracture at T11 *and obesity." Id.,* at *1 (emphasis added). Similarly, in *Morrison v. Apfel,* 146 F.3d 625, 627 (8th Cir.1998), the court held that the ALJ erred in failing to discuss the effect of obesity of the 330-pound claimant where a treating physician had explicitly described obesity as the claimant's "biggest problem," which had "caused most of the difficulties in his back, knees, and lower extremities."

Courts have generally refused to find that an ALJ has erred in failing to discuss the impact of obesity in the absence of an expressed claim of obesity impairment, or of some medical evidence suggesting a potential impairment due to obesity.  In *Box v. Shalala,* 52 F.3d 168, 171 (8th Cir.1995), the court held that the failure of the ALJ to address the effect of obesity was "not fatal" to the validity of the actions of the underlying decision since Box did not claim a disability based on obesity in his application for benefits or at the administrative hearing and there was no evidence in the record that his obesity imposed any limitations on his ability to work.  Similarly, in *Sutton v. Barnhart,* No. 05-2303, 2006 WL 1307959, at *6 (7th Cir. May 11, 2006), the Seventh Circuit held that a 239-pound claimant failed to show the ALJ erred in not mentioning her obesity, where claimant presented "no evidence that the side effect played any significant role in her inability to work," and further reasoning that since claimant "has been obese throughout the history of her medical treatment, and because her obesity has been remarked upon by her doctors, we have no reason to doubt that it was properly taken into account."  *See also Rutherford v. Barnhart,* 399 F.3d 546, 553 (3rd Cir.2005) (upholding a decision of the ALJ, notwithstanding his failure to discuss obesity, because the claimant failed to allege obesity as an impairment and the record contained no mention of obesity contributing to a severe impairment); *Santiago v. Barnhart,* 367 F.Supp.2d  728, 734 (E.D.Pa.2005) (no error by ALJ in failing to discuss obesity of claimant, who at various times weighed from 210 to 220 pounds, since the record was "devoid ... of any evidence (medical or otherwise) that plaintiff's relatively slight obesity exacerbated his impairments, nor did plaintiff allege obesity as a disability (either in his disability application or at his hearing))."

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical

professional. *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir.2004). Even if a treating

physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527

and §416.927." *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir.2003)(quotation omitted). Those

factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship, including the treatment provided and
> the kind of examination or testing performed; (3) the degree to which the physician's
> opinion is supported by relevant evidence; (4) consistency between the opinion and
> the record as a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's attention
> which tend to support or contradict the opinion.

*Id.* at 1300-01.

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns

the opinion, or for rejecting it. 20 C.F.R. § 404.1527(d)(2).

Dewitt maintains the ALJ 's findings are not supported by substantial evidence and that he

improperly assessed her RFC under Social Security Ruling ("SSR") 02-1p, in light of plaintiff's

obesity, and improperly weighed the medical opinions. (Dkt. No. 8 at 4-6).

Under SSR 02-1p, an adjudicator must consider the effects of obesity when evaluating

disability. There is no question that an ALJ must discuss the impact of obesity where it is an explicit

part of the claimant's alleged impairments, or where the medical evidence suggests that obesity

contributes to a reduction in a claimant's residual functional capacity.

Dewitt never raised obesity as an impairment or limitation before the ALJ, nor did she specify

or discuss how her obesity further impairs her ability to work either in her application (Tr. at 212),

during her consultative examination (Tr. at 510-514), or at her hearing (Tr. at 54 -89). There is no

7

evidence in the record suggesting that Dewitt's weight has contributed to an impairment.  Rather, the record shows that Dewitt's treating physician noted she was morbidly obese prior to the date of alleged disability (Tr. at 318), when she was actually gainfully employed.  Given the state of the evidence and the claims actually advanced before the ALJ, the court does not find any basis for reversal based on Dewitt's argument that the ALJ should have considered claimant's obesity in the opinion.

Dewitt next alleged the ALJ improperly weighed the medical opinions.  In assessing the medical opinions, the ALJ noted:

> There is no objective medical evidence of radiculopathy, neuropathy, muscle atrophy, sensory or strength deficits or another anatomical changes that would be consistent with her allegations of knee and neck pain.  There is no evidence of nerve impingement in the cervical or lumbar spine.  The laboratory and diagnostic tests of record do not substantiate the claimant's allegations regarding her neck and knee symptoms.  The claimant has not required any hospitalizations, inpatient treatment or surgical intervention as of the alleged onset date and thereafter for her alleged neck or knee impairments.

(Tr. at 24).

Additionally, Dr. Brahms, a medical consultant, indicated that the medical evidence of record supported a finding that the claimaint is capable of performing sedentary work but cannot grasp repetitively, work overhead with the right arm, can occasionally climb and should have no problem sitting.  (Tr. at 25).

The ALJ stated he gave the opinions of Drs. Ketchum, Jackson, Sharma, Galate and nurse practitioner Rajotte little weight because:

> [T]hey are conclusory and inconsistent with the signs and findings in the objective medical evidence of record, results of laboratory and diagnostic tests, claimant's activities of daily living, the failure . . . to cite specific medical evidence that would

support their opinions, and also were inconsistent with the opinions of Drs. Mosier,
Zarr, Venkat, Galate, and Toma and with a July 12, 2005 work assessment.
(Tr. at 25).

The ALJ assessed the medical evidence of treating and non-treating sources.  The ALJ

considered the medical evidence, including those of the treating doctors, and determined that plaintiff

was not disabled.  The ALJ's analysis is in accordance with the governing regulations and case law,

and is supported by substantial evidence in the record.  *See Branum v. Barnhart,* 385 F.3d 1268, 1275

(10th Cir.2004).

IT IS ACCORDINGLY ORDERED this 30th day of June, 2009, that the present appeal is

hereby denied since the ALJ's finding is supported by substantial evidence in the record.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE